# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CHANEL CRYER | ) | |
| 108 West Mill Avenue | ) | |
| Capitol Heights, Maryland  20743, | ) | |
| | ) | |
| JAMES BYRD | ) | |
| 5042 S. 9th St. | ) | |
| Arlington, VA 22204, | ) | |
| | ) | |
| JONATHAN CASHWELL | ) | |
| 2611 Douglass Rd. #101, SE | ) | |
| Washington, D.C. 20020, | ) | Case No. 06-02032 (EGS) |
| | ) | |
| MARC INMAN | ) | First Amended Collective Action and |
| 6705 Esslog St. | ) | Class Action Complaint |
| Capitol Heights, MD 20743, | ) | |
| On behalf of themselves and all others | ) | Jury Trial Demanded |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTERSOLUTIONS, INC. | ) | |
| 1418 Pennsylvania Avenue, S.E. | ) | |
| Washington, D.C.  20003, | ) | |
| | ) | |
| DREW GOLIN | ) | |
| 1331 North Carolina Avenue, N.E. | ) | |
| Washington, D.C.  20002, | ) | |
| | ) | |
| SARAH WALDER | ) | |
| 1331 North Carolina Avenue, N.E. | ) | |
| Washington, D.C.  20002, | ) | |
| | ) | |
| Defendants. | ) | |

---

## FIRST AMENDED COLLECTIVE ACTION AND CLASS ACTION COMPLAINT

Plaintiffs Chanel Cryer, James Byrd, Jonathan Cashwell, and Marc Inman through their

undersigned attorneys, for their Collective Action and Class Action Complaint against

defendants InterSolutions, Inc., Drew Golin, and Sarah Walder (collectively, "defendants"), allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this action against defendants for engaging in a uniform and systematic scheme of wage abuse against InterSolutions' hourly-paid employees.  This scheme began at least as long ago as the year 2003, and continues until the present.

2.       This scheme involves knowingly, willfully, and intentionally refusing to pay plaintiffs and other hourly-paid employees overtime compensation owed to them, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), and Md. Code Ann., Labor & Empl. § 3-415 (2006).

## THE PARTIES

3.      Plaintiff Chanel Cryer resides in the State of Maryland.  She worked for defendants in the District of Columbia, Maryland, and Virginia as an hourly-paid employee in InterSolutions' concierge division beginning in 2003.

4.      Plaintiff James Byrd resides in the State of Virginia.  He has worked for defendants in the District of Columbia and Virginia as an hourly-paid employee in InterSolutions' concierge division since 2005.

5.      Plaintiff Jonathan Cashwell resides in the District of Columbia.  He worked for defendants in the District of Columbia, Maryland, and Virginia as an hourly-paid employee in InterSolutions' concierge division in 2006.

6.      Plaintiff Marc Inman resides in the State of Maryland.  He worked for defendants in the District of Columbia and Virginia as an hourly-paid employee in InterSolutions' concierge division beginning in 2005.

7.     InterSolutions is a District of Columbia corporation, with its principal place of business in the District of Columbia, and satellite offices in Maryland, Virginia, and Pennsylvania.

8.     InterSolutions is engaged in interstate commerce, as it owns, operates, and manages offices in Washington, D.C., Maryland, Virginia, and Pennsylvania, and provides temporary employment services in all of those jurisdictions.

9.     InterSolutions is an enterprise engaged in commerce as that term is defined in 29 U.S.C. §§ 203(r) and (s).

10.     Defendants Golin and Walder, husband and wife, are co-owners of InterSolutions. Golin and Walder reside in the District of Columbia.

11.     The acts charged in this Complaint were done by or at the direction of defendants InterSolutions, Golin, and Walder.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over Count I pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

13.     This Court has jurisdiction over Count II pursuant to 29 U.S.C. § 1292(b).

14.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(c), because InterSolutions, Golin, and Walder are subject to personal jurisdiction in this District.  Venue in this district is also proper pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## COLLECTIVE ACTION CLASS AND MARYLAND SUBCLASS

15.     This action is brought as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of plaintiffs and all other persons who are or have been employed by InterSolutions as

hourly-paid employees and who worked more than forty (40) hours during any given workweek of their employment between November 29, 2003, and the date of the final disposition of this action (hereinafter the "Class Period"). These individuals will be referred to jointly as the "Class."

16.     This action is also brought as a class action pursuant to Fed. R. Civ. P. 23. Plaintiff alleges claims pursuant to Md. Code Ann., Labor & Empl. § 3-415 (2006), on behalf of herself and all similarly situated hourly-paid InterSolutions employees who worked on behalf of InterSolutions at worksites in the State of Maryland since November 29, 2003, and who worked more than forty (40) hours during any given workweek of their employment. These individuals will be referred to jointly as the "Maryland Subclass."

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

17.     InterSolutions is in the business of providing staffing to residential and commercial properties in the District of Columbia, Maryland, Virginia, Pennsylvania, and New Jersey. This staffing includes, among others, front desk/concierge personnel, leasing personnel, and maintenance personnel.

18.     Defendants offered each plaintiff and each Class member hourly-paid employment, which each plaintiff and each Class members accepted, thereby entering into an employment relationship.

19.     Upon information and belief, InterSolutions has, during the Class Period, employed hundreds of hourly-paid employees, who were assigned to work in the District of Columbia, Maryland, and Virginia.

20.     InterSolutions' "Policies and Expectations Handbook" states that the hourly-paid employees are "eligible for overtime." The Handbook also states that all employees are expected

to work overtime when requested, and that "[n]on-exempt associates are paid at time and one-half of their base hourly rates when they physically work over 40 hours in the workweek."

21.     Defendants were aware that they had an obligation to pay their hourly-paid employees time-and-one-half their regular hourly rate of pay for hours worked in excess of forty (40) hours each workweek.

22.     Despite the language of the Handbook and defendants' awareness of their obligations under relevant wage and hour laws, defendants created and implemented a system through which they denied plaintiff and Class members one-and-one-half times their regular hourly rate of pay for hours worked in excess of forty hours during each workweek.

23.     On information and belief, defendants' scheme to deny payment of overtime wages at the required rate of one-and-a-half times the employees' regular rate took at least three forms:

      a.  Payment for hours in excess of forty (40) hours in a given workweek at the employee's regular rate of pay; and/or

      b.  Payment for hours in excess of forty (40) hours in a given workweek at a rate higher than the employee's regular rate of pay, but less than one-and-a-half times the employee's regular rate of pay; and/or

      c.  Failure to pay the overtime due at any rate.

24.     Prior to or during the Class Period, defendants began stating explicitly as part of their orientation of new concierge division employees that such employees were not entitled to overtime pay and/or that such employees were entitled to overtime pay only when they worked more than forty (40) hours at one client site during a single workweek.

-

25.     Prior to or during the Class Period, defendants held staff meetings and/or authorized or ordered their officers, agents, employees, or representatives to hold such meetings, at which the unlawful practices described herein were discussed and authorized or ordered.

26.     Between approximately the Fall of 2003 and the Fall of 2005, plaintiff Cryer worked for defendants in InterSolutions' concierge division, providing front desk concierge services primarily at residential buildings in Maryland.

27.     During plaintiff Cryer's employment with defendants, she worked more than forty (40) hours in a single workweek on numerous occasions and was not paid one-and-a-half times her regular hourly rate of pay for many of the hours that she worked in excess of forty (40) hours.

28.     Plaintiff Byrd has worked for defendants in InterSolutions' concierge division, providing front desk concierge services, primarily at residential buildings in Virginia, from the fall of 2005 through the present.

29.     During plaintiff Byrd's employment with defendants, he worked more than forty (40) hours in a week on multiple occasions but was not paid one and a half times his regular hourly rate for many of the hours that he worked in excess of forty (40) hours.

30.     Plaintiff Cashwell worked for defendants in InterSolutions' concierge division, providing front desk concierge services primarily at residential buildings from approximately January 2006 through approximately May 2006.

31.     During plaintiff Cashwell's employment with defendants, he worked more than forty (40) hours in a week on multiple occasions but was not paid one and a half times his regular hourly rate for many of the hours that he worked in excess of forty (40) hours.

32.      Plaintiff Inman worked for defendants in InterSolutions' concierge division, providing front desk concierge services primarily at residential buildings in Washington, D.C., from approximately the Spring of 2004 until approximately the Spring of 2006.

33.      During plaintiff Inman's employment with defendants, he worked more than forty (40) hours in a week on multiple occasions but was not paid one and a half times his regular hourly rate for many of the hours that he worked in excess of forty (40) hours.

34.      When concierge division employees questioned or challenged defendants' failure to comply with applicable overtime laws, defendants responded, nonexclusively, that (a) the employee was not entitled to overtime pay; (b) if the employee did not like being denied overtime pay, he or she did not have to work for InterSolutions; and/or (c) the employee was entitled to overtime pay only if he or she worked more than forty (40) hours in one week at a single client site.

35.      In some instances, when a concierge division employee challenged defendants' failure to comply with the relevant overtime laws, defendants retaliated against the employee by instructing agents and/or representatives of InterSolutions to deny the complaining employee further assignments.

36.      To this day, plaintiffs and the Class members have not been paid all wages they are owed for hours worked during the Class Period.

37.      Defendants issued check stubs to their hourly-paid employees, but those check stubs generally did not show the hourly rate of pay.  In some cases, the check stubs did not list overtime hours worked as overtime hours and/or did not accurately show the number of overtime hours worked.

38.     Defendants Golin and/or Walder had decision-making authority over InterSolutions' payroll policies and practices, including but not limited to the hourly-paid employees' rate of pay, overtime hours, and method of payment; the maintenance of employee records; and the power to hire, fire, or deny further assignments to employees.

39.     Defendants Golin and/or Walder had daily supervisory control over InterSolutions' payroll practices and activities, and had operational control over all aspects of InterSolutions' day-to-day functions beyond payroll practices and activities.

40.     Defendants were aware at all times during the Class Period that their overtime practices did not comport with applicable law.

41.     The compensation policies and practices set forth above constitute willful, knowing, and intentional violations of the FLSA, as well as of the laws of the State of Maryland.

## COLLECTIVE ACTION ALLEGATIONS
### (ON BEHALF OF THE CLASS)

42.     The collective action that plaintiffs proposes to maintain includes all individuals who are or have been employed by InterSolutions as hourly-paid employees and who worked more than forty (40) hours during any given workweek of their employment between November 29, 2003 and the date of the final disposition of this action.

43.     During the Class Period, the duties and responsibilities of the jobs held by members of the proposed collective action were the same as or substantially similar to the duties and responsibilities of the jobs held by plaintiff.

44.     Plaintiffs and the members of the proposed collective action are and were subject to the unlawful compensation policies and practices set forth in paragraphs 14 through 32 above.

45.    Accordingly, plaintiffs and all of the members of the proposed collective action are "similarly-situated" within the meaning of 29 U.S.C. § 216(b), and entitled to proceed on a collective basis.

## CLASS ACTION ALLEGATIONS
## (ON BEHALF OF THE MARYLAND SUBCLASS)

46.    This action is also brought on behalf of members of a subclass of InterSolutions' employees to whom Md. Code Ann., Labor & Empl. § 3-415 (2006) applies (the "Maryland Subclass").

47.    Plaintiff Cryer is a member of and seeks to represent to Maryland Subclass.

48.    The claims of the Maryland Subclass are properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(1)-(3).

49.    The Maryland Subclass is defined as follows:  "All hourly-paid InterSolutions employees who worked on behalf of InterSolutions at worksites in the State of Maryland since November 29, 2003, and who worked more than forty (40) hours during any given workweek of their employment."

50.    The "Maryland Subclass Period" is the time period between November 29, 2003, and the time of the final disposition of this action.

51.    The duties and responsibilities of the jobs held by members of the Maryland Subclass were the same as or substantially similar to the duties and responsibilities of the job held by plaintiff.

52.    On information and belief, there are at least fifty (50) present and former hourly-paid employees in the Maryland Subclass.

53.    The members of the Maryland Subclass are so numerous that joinder of all members is impracticable.

54.     Plaintiff Cryer's claims are typical of the claims of the members of the Maryland Subclass because she and all Subclass members had or have the same or substantially similar job responsibilities and duties, and were subject to the unlawful compensation policies and practices set forth in paragraphs 17 through 41 above.

55.     Plaintiff Cryer is an adequate representative of the Maryland Subclass because she and the members of the Maryland Subclass are or were subject to and damaged by the same unlawful compensation policies and practices set forth in paragraphs 17 through 41 above.

56.     Plaintiff Cryer and the members of the Maryland Subclass each challenge the legality of the policies and practices set forth in paragraphs 17 through 41 above.  By advancing her own claims, plaintiff Cryer will necessarily advance the claims of the members of the Maryland Subclass.

57.     Plaintiff Cryer will have no conflict with any members of the Maryland Subclass and is capable and willing to serve in this representative role.

58.     Plaintiff Cryer has retained counsel that are competent and experienced in class-action litigation and who will adequately represent the Maryland Subclass.

59.     Questions of fact and law common to all members of the Maryland Subclass will predominate over any questions solely affecting individual members of the Subclass.  Among the common questions are:

    a.     Whether the policies and practices set forth in paragraphs 17 through 41 above took place as alleged; and

    b.     The legality, under Maryland law, of the policies and practices set forth in paragraphs 17 through 41 above.

60.     Because plaintiff Cryer and all members of the Maryland Subclass had the same or substantially similar job duties and responsibilities, and challenge the same unlawful compensation policies and practices set forth in paragraphs 17 through 41 above, a class action is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously and efficiently, without the duplication of effort and expense and the risk of inconsistent or varying adjudications presented by numerous individual actions.

61.     No difficulties are likely to be encountered in the management of this class action, and the identity of the Maryland Subclass is readily available from defendants' records.

## COUNT I:  VIOLATION OF THE FLSA

62.     Plaintiffs re-alleges and incorporates by reference the allegations contained in paragraphs 1-61 above.

63.     Plaintiffs and Class members are or were employed by InterSolutions on an hourly basis.

64.     Plaintiffs and Class members each worked more than forty (40) hours in one or more workweeks within the Class Period.

65.     Defendants failed to pay plaintiffs and Class members or caused plaintiffs and Class members not to be paid for overtime at a rate of one-and-a-half times the employee's regular rate.

66.     By their conduct set forth herein, defendants violated the FLSA, 29 U.S.C. § 207(a), by failing to pay plaintiffs and Class members overtime compensation at one and one-

half their regular hourly rate for all hours worked in excess of forty (40) hours during a given workweek.

67.     Defendants' violations of the FLSA, 29 U.S.C. § 207(a), were repeated, willful, and intentional.

68.     Plaintiffs and Class members have been damaged by said violations of the FLSA.

69.     For their violation of the FLSA, defendants are liable to plaintiffs and Class members for back pay, liquidated damages, and costs and reasonable attorneys' fees incurred in the maintenance of this action.

## COUNT II:  VIOLATION OF MARYLAND LAW

70.     Plaintiff Cryer re-alleges and incorporates by reference the allegations contained in paragraphs 1-69 above.

71.     Plaintiff Cryer and the members of the Maryland Subclass are or were employed by InterSolutions on an hourly basis within the Class Period.

72.     Plaintiff Cryer and the members of the Maryland Subclass each worked more than forty (40) hours in one or more workweeks within the Class Period.

73.     Defendants failed to pay plaintiff Cryer and the Maryland Subclass members or caused plaintiff Cryer and the Maryland Subclass members not to be paid for overtime at a rate of one-and-a-half times the employee's regular rate.

74.     By their conduct, as set forth herein, defendants violated Md. Code Ann., Labor & Empl. § 3-415 (2006), by failing to pay plaintiff Cryer and Maryland Subclass members overtime compensation at one-and-one-half their regular hourly rate for all hours worked in excess of forty (40) hours during any workweek.

75.     Defendants' violations of Md. Code Ann., Labor & Empl. § 3-415 (2006) were repeated, willful, and intentional.

76.     Plaintiff Cryer and the Maryland Subclass members have been damaged by said violations of Md. Code Ann., Labor & Empl. § 3-415 (2006).

77.     Pursuant to Md. Code Ann., Labor & Empl. § 3-427 (2006), in addition to actual damages, defendants are liable to the plaintiff and the Maryland Subclass for unpaid wages to which they are owed, treble damages, and costs and reasonable attorneys' fees incurred in the maintenance of this action.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs, on behalf of themselves and members of the Class and the Maryland Subclass, respectfully requests that the Court:

A.     Determine the damages sustained by plaintiffs and Class members during the Class Period as a result of defendants' willful and intentional violations of 29 U.S.C. § 207(a), and award such back pay against defendants in favor of plaintiffs and all members of the Class, plus an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b), plus such pre-judgment interest as may be allowed by law; and

B.     Determine the damages sustained by plaintiff and Maryland Subclass members during the Maryland Subclass Period as a result of defendants' willful and intentional violations of Md. Code Ann., Labor & Empl. § 3-415 (2006), and award all appropriate damages resulting therefrom to plaintiffs and the members of the Maryland Subclass; and

C.    Award plaintiffs and the members of the Class and the Maryland Subclass their

costs and disbursements of this suit, including, without limitation, reasonable

attorneys', accountants', investigators', and expert fees; and

D.    Grant plaintiffs and the members of the Class and the Maryland Subclass such

other and further relief, including, without limitation, injunctive relief where

appropriate, as the Court may deem just and proper or that is allowed under any

Federal or state law violated by the defendants' conduct described herein.

## JURY DEMAND

Plaintiff demands a jury trial on all claims so triable.

Dated: January 9, 2007

Respectfully submitted,

Thomas J. Mikula (D.C. Bar No. 396105)
Adam M. Chud (D.C. Bar No. 468443)
Sarah S. Keast (D.C. Bar No. 493632)
Goodwin Procter LLP
901 New York Avenue, N.W.
Washington, D.C.  20001
Tel.: (202) 346-4000
Fax:  (202) 346-4999

Susan E. Huhta (D.C. Bar No. 453478)
Carolyn P. Weiss (D.C. Bar No. 480697)
Washington Lawyers' Committee for
    Civil Rights and Urban Affairs
11 Dupont Circle, N.W., Suite 400
Washington, D.C.  20036
Tel.: (202) 319-1000
Fax:  (202) 319-1010

*Counsel for Chanel Cryer, James Byrd,
Jonathan Cashwell, Marc Inman, the Class,
and the Maryland Subclass*

- 14 -