IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHANEL CRYER, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>INTERSOLUTIONS, INC., )<br>)<br>Defendants. )<br>_____) | Case No.: 1:06-cv-02032-EGS |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MEMORANDUM IN SUPPORT OF REQUEST FOR ORDER PROHIBITING COMMUNICATIONS BETWEEN DEFENDANTS AND THEIR COUNSEL AND PUTATIVE CLASS MEMBERS REGARDING THIS LAWSUIT**

Pursuant to the Court's April 25, 2007, Order, Defendants hereby submit the following Opposition to Plaintiffs' Memorandum in Support of Request for Order Prohibiting Communications Between Defendants and Their Counsel and Putative Class Members.

Plaintiffs' request for an order prohibiting all communications between Defendants and their counsel and potential opt-in members of the collective action is premature, overbroad and unwarranted under the circumstances.

**A. The Standard for Issuing an Order Prohibiting Contact Between Parties and Potential Opt-in Members Requires a Clear record and Specific Findings by the Court**

A court's authority to exercise control over a class action "is not unlimited." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). In the context of the exact relief Plaintiffs seek here, "an order limiting communications between parties and potential class members should be based on a *clear record* and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 100-01 (emphasis added). The

District of Columbia Circuit similarly has noted that to support an order restricting communication, "the courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *In re Halkin*, 598 F.2d 176, 193 (D.C. Cir. 1979), *rev'd on other grounds by Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984). *See also Barnes v. Julien J. Studley, Inc.*, 1989 WL 27405, *2 (D.D.C. 1989) (rejecting order limiting communication between parties and potential class members because the litigant's concern of improper behavior was speculative); *Coles v. Marsh*, 560 F.2d 186, 189 (3d Cir. 1977) ("[T]o the extent that the district court is empowered . . . to restrict certain communications in order to prevent frustration of the policies of Rule 23, it may not exercise the power without a specific record showing by the moving party of the particular abuses by which it is threatened. . . . Imposition of an order on anything less than a clear showing of particularized need removes it from the area of [a court's] discretion.").

The facts of this case do not warrant the order requested by Plaintiffs. The case law is clear that judicial orders restricting communication between parties and potential class members are *remedial* in nature, and may be imposed only on specific findings by the Court of a need for the restriction. In this case, however, Plaintiffs request from the Court a prophylactic gag order merely because they are concerned about potential opt-in members receiving Notice. Plaintiffs have made bald accusations without any discovery or evidence. This is an improper basis on which to request an order restricting contact.

In this case, there have been no hearings before the Court at which Plaintiffs have complained of improper behavior by Defendants. Nor have Plaintiffs filed any motions seeking relief from alleged coercive or improper contact by Defendants. Indeed, the first mention of Plaintiffs' requested order came at the parties April 25, 2007, status conference. There is no

record on which the Court could even contemplate making specific findings of the need for a remedial order preventing Defendants from communicating with potential members of the collective action. The plaintiffs would base the Court's ruling on a single declaration by an individual who Defendants have had no contact with since the beginning of this litigation and who has filed her own separate lawsuit against InterSolutions. This is precisely the "stereotyped and conclusory statements" the District of Columbia Circuit warned against. Moreover, InterSolutions' payment of unpaid overtime and liquidated damages shows its good faith desire to comply with the law, not, as Plaintiffs suggest, a need to restrict contact.

Defendants note to the Court that Plaintiffs' requested order states: "If any potential class members seek information from defendants or defense counsel regarding the lawsuit or the Notice, such inquiries shall be directed to plaintiffs' counsel." In *Gulf Oil*, however, the Supreme Court was concerned with the behavior of plaintiffs' counsel, not defendants' counsel.

The Court stated: "The potential class abuses associated with communications to class members [include] the heightened susceptibilities of nonparty class members to solicitation amounting to barratry as well as the increased opportunity of the parties or counsel to drum up participation in the proceeding." *Gulf Oil*, 452 U.S. at 100 n.12 (internal quotations omitted). The Supreme Court was concerned about improper behavior by the plaintiffs and *plaintiffs' counsel* not by the defendants. Yet, in this case, Plaintiffs wish for a Court order requiring Defendants not only not to communicate to potential members of the collective action, but also to affirmatively direct potential members to Plaintiffs' counsel for advice and information. The concerns expressed by the Supreme Court are present here.

B.     **Plaintiffs' Desired Order Raises Serious First Amendment Questions.**

The Supreme Court warned in *Gulf Oil* that the weighing of the need for a limitation and the potential interference with the rights of the parties "should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Gulf Oil* at 100-01.  *Gulf Oil* recognized that orders restricting communication between counsel and potential members of a collective action "involve[] serious restraints on expression.  This fact, at minimum, counsels caution on the part of a district court in drafting such an order, and attention to whether the restraint is justified by a likelihood of serious abuse." *Id.* at 104.  Similarly, the District of Columbia Circuit cautioned that a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, is "constitutionally mandated when the order restricts expression to assure that the order is no broader than absolutely necessary to protect the countervailing interest.  An order restraining speech cannot be based on a record that reveals only naked speculation." *In re Halkin*, 598 F.2d at 193.  *See also Belt v. Emcare, Inc.*, 299 F.Supp.2d 664, 667 (E.D. Tex. 2003) ("Although the Court has broad authority to manage the collective action, the First Amendment requires the Court to tailor any restrictions on a party's ability to speak with absent class members.  Courts must base any order limiting communications between parties and potential class members on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of parties.").

In this case, Plaintiffs' requested order raises serious First Amendment concerns.  Plaintiff's requested order amounts to a judicially-sanctioned gag order upon only the Defendants, which, under the case law, would be overbroad even in cases in which the Court has before it a record clearly showing the need for some restrictions on communication.  Here,

4

however, the Court has absolutely no record before it of the need for communication restrictions. The order requested by Plaintiffs is unconstitutional in this case.

**C.     Plaintiffs Should Move During the Opt-in Period if Facts Come to Light That Indicate a Need for Communication Restrictions.**

This is an inappropriate juncture for the Court to order a limitation on communication between Defendants and potential members of the collective action. As the opt-in timeline unfolds, Plaintiffs are free to move the Court for a restriction based on a clear record of improper behavior by Defendants. Presently, however, the policies of promoting early settlement strongly weigh in favor of permitting open dialogue between Defendants and their current employees regarding the case and the opt-in process. Indeed, Defendants' good faith is manifested by the fact that at the outset of this action, InterSolutions undertook an exhaustive audit and paid overtime checks to over fifty employees and former employees. This good faith resolution would have been prohibited under Plaintiffs' requested gag order and is proof that the gag order would injure workers and only serve to profit plaintiffs' attorneys.

As the Court is aware, every current InterSolutions employee who fits the definition of the collective action will receive Notice in the mail and in their first May paycheck. The Notice clearly states that the individual may contact Plaintiffs' counsel for further information. The Notice also states that federal law prohibits InterSolutions from retaliating against an employee for asserting his or her rights. The right to be free from retaliation and the right to contact Plaintiffs' counsel do not evaporate if Defendants discuss the case with their current employees.

Dated:  April 26, 2007

>Respectfully submitted,
>
>\_\_/s/_____
>Manesh K. Rath (D.C. Bar No. 457835)
>*rath@khlaw.com*
>
>Keller and Heckman LLP
>1001 G Street, N.W.
>Suite 500 West
>Washington, D.C.  20001
>Tel:  (202) 434-4100
>Fax:  (202) 434-4646
>
>Counsel for Defendants