**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CHANEL CRYER, JAMES BYRD, | ) | |
| JONATHAN CASHWELL, and | ) | |
| MARC INMAN, on behalf of themselves | ) | |
| and all others similarly situated | ) | |
| | ) | Case No. 06-02032 (EGS) |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| INTERSOLUTIONS, INC., | ) | |
| DREW GOLIN, and | ) | |
| SARAH WALDER | ) | |
| | ) | |
| Defendants. | ) | |

## UNOPPOSED MOTION FOR APPROVAL AND ENTRY OF CONSENT DECREE

Plaintiffs and Defendants hereby jointly move this Court, for the reasons outlined in the parties' Memorandum in Support filed herewith, for entry of the attached Consent Decree, entered into by the parties.

DATED:  June 6, 2007

Respectfully submitted,

_____
Thomas J. Mikula (D.C. Bar No. 396105)
Adam M. Chud (D.C. Bar No. 468443)
Sarah S. Keast (D.C. Bar No. 493632)
Goodwin Procter LLP
901 New York Avenue, N.W.
Washington, D.C.  20001
Tel.: (202) 346-4000
Fax:  (202) 346-4999

Susan E. Huhta (D.C. Bar No. 453478)
Carolyn P. Weiss (D.C. Bar No. 480697)
Washington Lawyers' Committee for
Civil Rights and Urban Affairs
11 Dupont Circle, N.W., Suite 400
Washington, D.C.  20036
Tel.: (202) 319-1000
Fax:  (202) 319-1010

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHANEL CRYER, JAMES BYRD,<br>JONATHAN CASHWELL, and<br>MARC INMAN, on behalf of themselves<br>and all others similarly situated<br><br>                Plaintiffs,<br><br>v.<br><br>INTERSOLUTIONS, INC.,<br>DREW GOLIN, and<br>SARAH WALDER<br><br>                Defendants. | )<br>)<br>)<br>)<br>)        Case No. 06-02032 (EGS)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL AND ENTRY OF CONSENT DECREE

Plaintiffs Chanel Cryer, James Byrd, Jonathan Cashwell, and Marc Inman move

this Court to enter the attached Consent Decree.  As explained in greater detail below, the

Consent Decree is a fair, adequate, and reasonable resolution of the claims asserted in this

action.  Defendants have agreed, pursuant to the settlement reached, to entry of a consent

decree as a resolution of this matter and do not to oppose this motion for its entry.

### BACKGROUND

On November 29, 2006, Chanel Cryer filed this lawsuit against InterSolutions,

Inc., and owners Drew Golin and Sarah Walder, seeking backpay and liquidated damages

for overtime work that was allegedly not compensated at the required overtime rate of

pay of time and one half her regular rate of pay.  Ms. Cryer brought this action on behalf

of herself and similarly situated current and former temporary employees of

InterSolutions.  She alleged violations the federal Fair Labor Standards Act, 29 U.S.C. §

1

207(a), and, with respect to herself and those temporary employees who worked overtime in Maryland, Maryland's wage and hour law, Md. Code Ann., Labor & Empl. § 3-415 (2006), *et seq*. In January 2007, Plaintiff filed a first amended complaint as of right, adding James Byrd, Jonathan Cashwell, and Marc Inman as named Plaintiffs.

On Plaintiffs' motion, by Order dated April 7, the Court conditionally certified a collective action under the FLSA and ordered that notice of the collective action be issued to the class (defined as "all persons who are or have been employed by Intersolutions as temporary employees and who worked more than forty (40) hours during any given work week between May 1, 2004 and the present"). Defendants have identified 548 individuals, in addition to the named Plaintiffs, who fit this class definition. Notice of the conditionally-certified collective action has not yet been issued to the class.

Defendants maintain that after this lawsuit was filed, InterSolutions undertook an internal audit to identify whether any overtime payments were still owed to its temporary employees and paid to those employees double any amounts of unpaid overtime identified by that audit. Plaintiffs did not participate in that internal audit by InterSolutions, and have not had the opportunity to confirm the completeness or validity of that audit.

## PROPOSED SETTLEMENT

After extensive settlement discussions, the parties have reached a settlement that Plaintiffs contend provides a fair, adequate, and reasonable resolution of these claims. The attached Consent Decree memorializes a settlement that provides the named Plaintiffs with payments that they believe compensate them for unpaid overtime going

back three years from the filing of the complaint, and provide sufficient monies to cover the liquidated damages to which Plaintiffs would be entitled under the Fair Labor Standards Act, as well as reasonable attorneys' fees and costs. *See* 29 U.S.C § 216(b); *see also Dove et al. v. Coupe et al.*, 759 F.2d 167, 175 (D.C. Cir. 1985) (stating that an employer who fails to pay overtime compensation is entitled to unpaid wages and an equal amount as liquidated damages).

Defendants, on the other hand, admit no liability and contend that the Plaintiffs are owed no monies. They contend that some of the Plaintiffs and many other former employees were compensated in full when the Defendants issued them checks after Defendants' internal audit, conducted after the filing of the Complaint in this action. Therefore, Defendants do not agree that the sums paid are compensation for unpaid wages and liquidated damages. Instead, Defendants view the payments as consideration for Plaintiffs' release of their claims.

With respect to the conditionally certified FLSA class, the proposed Consent Decree is not a class settlement, and in fact decertifies the conditional class. The Consent Decree does, however, provide for a process for verifying that the absent class members have received two times any amount of unpaid overtime that they were owed as of the filing of the Complaint in this action. The Consent Decree provides for the retention of an auditor, to be paid at Defendants' expense, who will promptly evaluate whether Defendants' internal audit was reasonably accurate and comprehensive in compensating those temporary employees who would be class members in the collective action for unpaid over time (times two). Thus, while the Consent Decree requires no release of any absent class members' claims – and therefore no compromise of their rights – it

3

nonetheless contains a procedure for verifying that Defendant have paid to absent class members double any overtime that was unpaid as of the filing of the complaint in this action, and requires such payments where any errors are identified by the auditor.

      A.    <u>Payments to the Named Plaintiffs</u>

The parties' settlement as embodied in the Consent Decree provides for payments of $2,500 to Ms. Cryer; $1,500 to Mr. Byrd; $2,200 to Mr. Cashwell; and $6,000 to Mr. Inman.  Plaintiffs believe that these monetary payments are no less than the full amount that Plaintiffs believe they are entitled to recover under their FLSA claims.  At an early stage of settlement negotiations in this case, the Plaintiffs each conferred with their counsel and, after extensive discussions and with the assistance of counsel, approximated the total amount they believed they were owed by Defendants, figures which included Plaintiffs' estimate of their unpaid overtime wages as well as an equal amount for liquidated damages.  *See* 29 U.S.C § 216(b); s*ee also Dove,* 759 F.2d at 175.  Under this proposed Consent Decree, Defendants have agreed to provide payments that include double the amounts of unpaid overtime that Plaintiffs estimate they are owed.  Defendants admit no liability and dispute that the Plaintiffs are owed any of these monies; nonetheless Plaintiffs believe that their claims are fully satisfied by this settlement.

      B.    Proposed Nonclass Settlement and
               <u>Payments to Absent Temporary Employees</u>

As noted above, the Consent Decree is not a class settlement.  Rather, Plaintiffs seek entry of the attached proposed Consent Decree which would approve settlement of the named Plaintiffs' claims, decertify the conditional collective action, and dismiss the Rule 23 class claims without prejudice.  As explained further below, the Court has the

authority to grant Plaintiffs' requests, which are in the interests of justice for both the named Plaintiffs and the putative class members.

Because no Rule 23 class has yet been certified, and because notice has not yet issued in this matter with respect to the conditionally certified FLSA claims, there is nothing prohibiting this Court from decertifying the conditional FLSA class and approving a non-class settlement. *See Fortna v. QC Holdings, Inc.*, Slip Copy, 2007 WL 214438, Case No. 06-0016 (N.D. Okla. Jan. 26, 2007) (decertifying FLSA collective action for settlement prior to notice being issued).

Furthermore, in this instance, the Court would be furthering a fully fair and reasonable settlement by approving this non-class settlement, given the proposed remedial aspects of the Consent Decree vis-à-vis the absent class members. Under the terms of the Consent Decree, the class and collective action claims will be dismissed without prejudice so that any absent class member can pursue a future claim against Defendants, if any are so inclined.

Nonetheless, under the terms of the Consent Decree, Defendants will retain a highly qualified expert to audit three years of payroll and overtime payment history of a sampling of the absent class members. *See generally Summers et al., v. Howard University*, 374 F.3d 1188 (D.C. Cir. 2004) (discussing use of special master to determine overtime pay and liquidated damages owed in FLSA case). After performing the sampling audit, the auditor will issue a conclusion as to whether Defendants' internal audit has been reasonably accurate and comprehensive in identifying unpaid overtime and making payments of such amount owed (times two) to the absent class members. If the auditor determines that Defendants' internal audit was not reasonably accurate and

comprehensive, Defendants will be afforded an opportunity to correct any errors in payroll with respect to the class, after which they will then be subject to a second sampling-based audit by the auditor.  If, after this second sampling-based audit, the auditor determines that the Defendants' corrected internal audit still does not meet the auditor's standards, then the auditor will conduct an audit of the payroll records and pay histories of every absent class member.  Defendants will be required to pay twice any amounts overtime pay identified as still unpaid by the auditor at any point during the audit process.

Thus, the Consent Decree establishes a procedure for ensuring that Defendants have in fact (as they maintain they have) now paid all temporary employees who fall within the defined class two times any amounts of unpaid overtime that were owed as of the filing of this lawsuit.  Plaintiffs consider these amounts to constitute full compensation to the absent class members for both unpaid overtime wages and for an equal amount of liquidated damages provided for under the FLSA.[1]  As a result, the proposed settlement provides the best of both worlds for the temporary employees who are not parties to this action.  Those individuals identified by the auditor as being owed unpaid overtime pay will be compensated for such deficiencies and will also receive a second amount that would be equal to liquidated damages that they could recover if they were to pursue a clam on their own.  At the same time, these individuals will not be bound by this settlement and will not be required to sign a release, so they will be free to pursue any additional claims that they believe they have against Defendants.

---

[1] As noted above, Defendants admit no liability and do not agree to the characterization of any amounts as unpaid wages or as liquidated damages, and instead view these amounts as consideration for settlement.

C.     <u>Plaintiffs Attorneys' Fees and Costs</u>

The FLSA provides that, in addition to unpaid overtime and liquidated damages, a

plaintiff "shall" be entitled to recover "a reasonable attorney's fee" as part of his or her

recovery.  *See* 29 U.S.C. § 216(b).  The standard for approval of the attorneys' fees

portion of the Consent Decree is not onerous.  As explained by one district court:

> The FLSA does not require the court to assess the fairness of an agreed payment
> of attorneys' fees in settling a [non-class] action.  Indeed, the purpose of the
> fairness review is to ensure that an employer does not take advantage of an
> employee in settling his claim for wage, and not to ensure that the employee does
> not overcharge the employer.  In an individual FLSA claim, where separate
> amounts are set forth for the payments of unpaid wages and payments for
> attorneys fees, the court has greater flexibility in exercising its discretion in
> determining the reasonableness of the attorneys' fee.

*Ferguson v. Upscale Saturday Night, Inc., et al.*, Case no. 6:05-cv-1236, 2006 U.S. Dist.

LEXIS 63663 (M.D. Fla. Sept. 6, 2006) (internal citations omitted) (attached).  Like the

settlement at issue in *Ferguson*, the proposed Consent Decree would constitute a non-

class settlement, where separate amounts have been allocated toward payment to the

plaintiffs and reimbursement of fees and costs.

The Agreement provides for the payment of $147,800 in reasonable attorneys'

fees and costs to compensate both Goodwin Procter and the Washington Lawyers'

Committee for Civil Rights & Urban Affairs.  These fees reflect well more than a 60

percent discount off of the actual fees and costs that have been accrued drafting a

Complaint and an Amended Complaint, responding to Defendants' Motion to Dismiss,

moving for conditional certification of the collective action, litigating issues related to

class notice, engaging in months of settlement discussions and mediation, as well as

drafting the settlement documents, proposed consent decree, and related pleadings.

These fees also reflect the lengthy and intensive investigation Plaintiffs' counsel engaged

prior to bringing this collective and class action. Such investigation not only provided the foundation for filing Plaintiffs' original and amended complaints and successful motion for conditional certification, but also provided the grounds on which Plaintiffs were able to obtain meaningful class-wide relief in a Consent Decree that only binds the individually named Plaintiffs.

In addition, given that the Consent Decree provides full relief for the named Plaintiffs and protects the interests of the putative class members without precluding them from seeking additional relief, the attorneys' fees allocation of this settlement is eminently reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 435-36 (1983) (stating that in determining a reasonable attorneys' fee, "the most critical factor is the degree of success obtained" and that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee"); *see also Falica, et al., v. Advance Tenant Services, Inc., et al.,* 384 F. Supp. 2d 75, 77-80 (D.D.C. 2005) (incorporating the legal framework of civil rights fee shifting provisions into the FLSA).

As a result of the above, Plaintiffs respectfully submit that this Agreement is a fair, adequate, and reasonable settlement of the instant claims and, therefore, that it is in the interest of all the parties and the administration of justice to resolve this action without further litigation and in accordance with the parties' Consent Decree. Therefore, Plaintiffs respectfully request that this Court grant their Unopposed Motion for Approval and Entry of Consent Decree.

DATED:  June 6, 2007

Respectfully submitted,

_____
Thomas J. Mikula (D.C. Bar No. 396105)
Adam M. Chud (D.C. Bar No. 468443)
Sarah S. Keast (D.C. Bar No. 493632)
Goodwin Procter LLP
901 New York Avenue, N.W.
Washington, D.C.  20001
Tel.: (202) 346-4000
Fax:  (202) 346-4999

Susan E. Huhta (D.C. Bar No. 453478)
Carolyn P. Weiss (D.C. Bar No. 480697)
Washington Lawyers' Committee for
Civil Rights and Urban Affairs
11 Dupont Circle, N.W., Suite 400
Washington, D.C.  20036
Tel.: (202) 319-1000
Fax:  (202) 319-1010

*Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHANEL CRYER, JAMES BYRD,     )
JONATHAN CASHWELL, and     )
MARC INMAN, on behalf of themselves     )
and all others similarly situated     )
    )      Case No. 06-02032 (EGS)
          Plaintiffs,     )
v.     )
    )
INTERSOLUTIONS, INC.,     )
DREW GOLIN, and     )
SARA WALDER     )
    )
          Defendants.     )

## PROPOSED CONSENT DECREE

On November 29, 2006, Chanel Cryer filed a putative collective and class action lawsuit captioned *Cryer v. InterSolutions, Inc., et al.*, No. 06-02032 (D.D.C.) (the "*Cryer Action*"), bringing two counts, one under the Federal Fair Labor Standards Act, 29 U.S.C. § 207(a), and the other under Maryland's wage and hour law, Md. Code Ann., Labor & Empl. § 3-415 (2006) *et seq*. James Byrd, Jonathan Cashwell, and Marc Inman joined the *Cryer* Action as named plaintiffs on January 9, 2007. InterSolutions, Inc., Drew Golin and Sara Walder allege that all employees were paid the overtime wages to which they were entitled.

On Plaintiffs' motion, by Order dated April 7, the Court conditionally certified a collective action under the FLSA and ordered that notice of the collective action be issued to the class (defined as "all persons who are or have been employed by InterSolutions as temporary employees and who worked more than forty (40) hours during any given work week between May 1, 2004 and the present"). Defendants have

1

identified 548 individuals, in addition to the named Plaintiffs, who fit this class definition. Notice of the conditionally-certified collective action has not yet been issued to the class.

Prior to issuance of any notice to prospective class members, the Plaintiffs and Defendants, through counsel, informed the Court that they sought to avoid the expense, delay and inconvenience of further litigation and had agreed upon terms of settlement reflected in this Decree. Thus, without any admission of liability by defendants, and in reliance upon the representations contained herein, and in consideration of the mutual promises, covenants and obligations in this Consent Decree, and for good and valuable consideration, Plaintiffs and Defendants hereby stipulate and agree as follows:

## I.    Jurisdiction

1.01.    This Court has jurisdiction over the subject matter of this action and jurisdiction over the parties pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), and 28 U.S.C. § 1367.

1.02.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b).

## II.    Definitions

2.01.    "Auditor" means Marshall F. Berman, Esq., 4800 Montgomery Lane, Suite 150, Bethesda, Maryland 20814. If Mr. Berman is unable or unwilling to serve as Auditor, the parties consent to the selection of an Auditor chosen by the Court or by Magistrate Judge Alan Kay.

2.02.    "Defendants" means InterSolutions, Inc., Drew Golin, and Sara Walder.

2.03.    "Internal Audit" means the process by which InterSolutions evaluated its records and issued a check to temporary employees, which checks Defendants contend

2

represent the full amount of unpaid overtime pay, plus another check for the same

amount, which checks Defendants contend compensate such employees for all amounts

owed under any potential claim.

    2.04.   "Parties" means the Plaintiffs and the Defendants.

    2.05.   "Plaintiffs" means the named Plaintiffs Chanel Cryer, James Byrd,

Jonathan Cashwell, and Marc Inman.

### III.    General Provisions

    3.01.   This Consent Decree constitutes both an Order of the Court and a contract,

and all of its provisions are enforceable by the Parties.

    3.02.   The Parties agree that, since the FLSA claim was only conditionally

certified as a collective action, and no notice was issued to any putative member of the

conditionally-certified collective action, the FLSA claims may be resolved on a non-

collective action basis and the conditional collective action claim may be, and by effect

of this Consent Decree is, dismissed without prejudice to any putative collective action

member. No notice to FLSA putative collective action members is necessary. The

conditional FLSA collective action is hereby decertified.

    3.03.   The Parties agree that because no class or subclass has been certified

under Federal Rule of Civil Procedure 23 with respect to plaintiffs' Maryland wage and

hour claims, those claims may be resolved on a non-class basis and the class claims may

be, and by effect of this Consent Decree are, dismissed without prejudice to any putative

class member. No notice to absent Maryland class or subclass members is necessary.

    3.04.   With respect to Plaintiffs' claims under both the FLSA and Maryland law,

by this Consent Decree these claims will be deemed dismissed with prejudice.

3.05.    The provisions of this Consent Decree shall apply to and be binding upon the Parties, their respective heirs, executors, administrators, successors, representatives, agents, partners, employees, officers, directors, servants, parents, subsidiaries, assigns, co-obligors, co-guarantors, guarantors, sureties and all those who claim through them or who assert claims (or could assert claims) on their behalf.

## IV.    Future Compliance

4.01.    Defendants agree to comply with all relevant wage and hour laws, including but not limited to the Fair Labor Standards Act and the Maryland and District of Columbia wage and hour statutes.    Defendants also agree that they will not retaliate in violation of the Fair Labor Standards Act against any employee who seeks compensation for overtime hours worked or opposes any practice that he or she believes is contrary to these wage and hour laws.

## V.    Settlement Payments

### A.    Amount of payment

5.01    Defendants will make a one-time payment of: Two Thousand and Two Hundred Dollars ($2,200) to Jonathan Cashwell; One Thousand and Five Hundred Dollars ($1,500) to James Byrd; Six Thousand Dollars ($6,000) to Marc Inman; and Two Thousand and Five Hundred Dollars ($2,500) to Chanel Cryer to resolve the disputes between the parties.    Defendants will issue a W-2 to each of the Plaintiffs receiving these monies, which monies will be supplemental wage payments, with appropriate payroll deductions.

4

5.02    Defendants will pay $147,800 to the Plaintiffs for attorneys' fees and costs. This amount plus the amount described in paragraph 5.01 shall be known as the "Settlement Amount."

5.03    In addition to the Settlement Amount, Defendants shall also make a supplemental wage payment of twice the amount of unpaid overtime, less appropriate payroll withholdings, to any InterSolutions temporary employee that the Auditor identifies as remaining unpaid pursuant to Section VI below. The details of the Audit process are described in Section VI below. Payment of any amounts as a result of the Audit process shall be made to the affected temporary employee within thirty (30) days after the Auditor provides a report indicating that those amounts remain unpaid.

B.    Timing of payment

5.04    The Settlement Amount shall be paid on the following schedule: Within 30 days after entry of this Consent Decree, Defendants will deliver to Susan Huhta at the Washington Lawyers' Committee for Civil Rights, 11 Dupont Circle, Suite 400, Washington, D.C. 20036, five checks, one each made payable to Jonathan Cashwell, James Byrd, Marc Inman, and Chanel Cryer as described in paragraph 5.01 above and one made payable to The Washington Lawyers' Committee for Civil Rights and Urban Affairs in the amount of $20,000 as initial payment of legal fees and costs to Plaintiffs' counsel. Defendants will pay the remainder of the Settlement Amount in eight equal payments of $15,975, with one payment to be made on the same calendar day of the subsequent eight calendar months on which the Initial Payment was made. Defendants shall deliver all such payments to Susan Huhta at the Washington Lawyers' Committee for Civil Rights, 11 Dupont Circle, Suite 400, Washington, D.C. 20036.

## VI.   Audit

6.01    No later than three (3) days after the entry by the Court of a Consent Decree in the *Cryer* Action, Defendants shall provide the Auditor with a list of all persons who are or have been employed by InterSolutions as temporary employees and who worked more than forty (40) hours during any given work week between May 1, 2004, and May 1, 2007 (the "List").  A copy of the List has already been provided to Plaintiffs' counsel.

6.02    Within five (5) days after Defendants provide the Auditor with the List, the Auditor will randomly select from the List fifty (50) individuals ("Initial Sample") whose records he will audit, and notify counsel for Plaintiffs and Defendants of the names of the individuals he has selected.

6.03    Within fourteen (14) days after the Auditor provides the names of the 50 individuals, Defendants will provide the Auditor with any and all records the Auditor requests for the purpose of determining the amount of overtime payments to which the individuals were entitled since May 1, 2004.  Within this same period of time, Defendants will also produce to the Auditor a list of all employees who have been issued checks by Defendants since November 29, 2006, to compensate for unpaid overtime pay, as well as the amounts paid to each employee and copies of the checks that have been cashed.  The documents described in this paragraph will be made available to Plaintiffs' counsel, and Plaintiffs' counsel agree not to share with or allow anyone else access to the documents, and to examine the documents solely for purposes of verifying that complete and unaltered documents have been provided to the Auditor.

6.04    If upon review of the documents, the Auditor determines that any of the 50 selected individuals for the sample audit are inappropriate or otherwise would not allow for a full random sample, then the Auditor will promptly randomly select another individual from the List, communicate this to the parties, and within five (5) days thereof, Defendants will provide the documentation identified in paragraph 6.03 for that individual to the Auditor.

6.05    The Auditor will determine the amount of unpaid overtime pay that was due to each of the 50 temporary employees reviewed in the Initial Sample. He will then compare those amounts with the amounts of any checks sent by the Defendants to those individuals since November 29, 2006, to determine whether Defendants paid twice the gross amount of unpaid overtime payments.

6.06    Within thirty (30) days of receiving from Defendants the records for the 50 individuals, the Auditor shall issue an Initial Auditor's Report to Defendants' counsel and Plaintiffs' counsel. The Initial Auditor's Report shall state the Auditor's conclusion regarding whether he deems the Internal Audit to have been reasonably accurate and comprehensive based solely on his professional judgment and shall state the standard he applied (which standard is to be determined and applied solely as the Auditor sees fit) and identify which documents he reviewed. The Initial Auditor's Report shall also identify the amount of unpaid overtime pay due to each temporary employee in the Initial Sample of 50 individuals, and the difference between this amount and the amount paid by Defendants to that temporary employee, if any. If the Auditor concludes that there were any errors, then the Initial Auditor's Report shall further identify any methodological errors he found in the calculation of the unpaid overtime pay in the Internal Audit.

6.07    If the Auditor determines on the basis of the Initial Sample of the records of 50 individuals that the Internal Audit was reasonably accurate and comprehensive, Plaintiffs and Defendants agree to abide by the Defendants' Internal Audit, and no further auditing or action of any kind will be required, except as otherwise required by this Consent Decree.

6.08    Within thirty (30) days after receiving the Initial Auditor's Report, Defendants will issue checks to individuals that the Initial Auditor's Report identified as being owed additional overtime pay (less payroll deductions), plus another check for the same amount (less payroll deductions).  After making any such payments, Defendants shall submit to the Auditor a list of all additional payments to those individuals whose records were reviewed as part of the Initial Sample and copies of the checks that it sent making those payments.

6.09    If the Auditor determines on the basis of the Initial Sample of the records of 50 individuals that the Internal Audit was not reasonably accurate and comprehensive, then, within forty-five (45) days after receiving the Initial Auditor's Report, Defendants may correct methodological or other problems identified by the Auditor as resulting in unpaid overtime amounts, or make any other overtime payments that it elects in its discretion to make, and provide the Auditor with a list of the amounts paid and to whom such payments were made, as well as copies of the checks that it sent making those payments.

6.10    Within forty-five (45) days after the Auditor issues his Initial Auditor's Report, if the Initial Auditor's Report concluded that the Internal Audit was not reasonably accurate and comprehensive, the Auditor will identify twenty-five (25)

8

additional individuals from the List. The Auditor shall apply the same process described in paragraphs 6.04-6.06 to the review of the records for those 25 individuals.

6.11    Within fourteen (14) days after the Auditor identifies the 25 additional individuals whose records are to be reviewed, Defendants will provide the Auditor with the relevant documents (identified in paragraph 5.03) for those individuals.

6.12    Within thirty (30) days of receiving from Defendants the records for the 25 individuals, the Auditor will issue a Second Auditor's Report to Plaintiffs' counsel and Defendants' counsel.

6.13    If the Auditor in his sole discretion determines in the Second Auditor's Report that the Internal Audit is now reasonably accurate and comprehensive, the Parties agree to abide by the accuracy of Defendants' corrected Internal Audit and no further auditing or further action will be required, except as otherwise required by this agreement.

6.14    Within thirty (30) days after receiving the Second Auditor's Report, Defendants will issue checks to the individuals that the Second Auditor's Report identified as being owed additional overtime pay (less payroll deductions), plus another check for the same amount (less payroll deductions). After making any such payments, Defendants shall submit to the Auditor a list of all additional payments to those individuals whose records were reviewed and copies of the checks that it sent making those payments.

6.15    If the Auditor determines on the basis of the review of the records for the 25 individuals that the Internal Audit still was not reasonably accurate and comprehensive, the Auditor will review the records for all of the individuals on the List

9

whose records have not been audited, and issue a Third Auditor's Report identifying all remaining overtime amounts owed to the individuals whose records he reviewed.

6.16    Within fifteen (15) days after receiving the Third Auditor's Report, Defendants will issue checks to individuals that the Third Auditor's Report identified as being owed additional overtime pay (less payroll deductions), plus another check for the same amount (less payroll deductions). After making any such payments, Defendants shall submit to the Auditor a list of all additional payments to those individuals whose records were reviewed and copies of the checks that it sent making those payments.

6.17    Defendants will pay the Auditor's fees. Defendants have sole rights to negotiate, review, and approve as reasonable all Auditor's fees.

6.18    Within seven (7) days after receiving any report from the Auditor, Plaintiffs will file a copy of the reports with the Court.

6.19    If as a result of any audit Defendants send a check for unpaid overtime to any temporary employee and the check is returned as undeliverable, Defendants shall notify Plaintiffs' counsel within ten (10) days of receipt of the returned check, and Plaintiffs' counsel shall use their best efforts to locate an updated address for such individual. Defendants shall remail the check to any such address within ten (10) days after receipt of a new address from Plaintiffs' counsel.

## VII.    Releases

7.01    Upon entry of this Consent Decree, Plaintiffs will unconditionally and irrevocably release and discharge Defendants from any and all past and present civil claims whatsoever.

10

7.02    Upon entry of this Consent Decree, Defendants will unconditionally and irrevocably release and discharge Plaintiffs from any and all actually known past and present civil claims whatsoever.

7.03    No putative member of a FLSA collective action or Rule 23 class member in this Action will be required or requested to release his or her claim(s) in connection with the implementation of this Consent Decree.

### VIII.   Non-Competition and Trade Secrets

8.01    Plaintiffs agree to abide by the terms of any non-compete agreements they signed during their employment with Defendants.  This Consent Decree shall not, and shall not be construed to, expand or contract the substance or duration of any of Plaintiffs' prior non-compete agreements.

8.02    Plaintiffs affirm that they have not knowingly disclosed any customer lists, employee lists, or any trade secrets of InterSolutions.  Plaintiffs further affirm that, to the extent that they are bound by any otherwise applicable law on trade secrets or by any agreement on trade secrets or confidentiality that they previously entered into with InterSolutions, they remain so bound.  This paragraph does not, and shall not be construed to, expand or contract any of the Plaintiffs' confidentiality obligations beyond those established by applicable laws or agreements.

8.03    Plaintiffs agree to return to InterSolutions, Inc., either before or immediately upon the termination of employment with InterSolutions, Inc., all documents in their possession that identify clients, customers, or employees of InterSolutions. Counsel for Plaintiffs agree to return to InterSolutions, Inc., upon entry of this Consent Decree, any documents in their possession that identify clients, customers, or employees

11

of InterSolutions, including the documents provided by Defendants' counsel during

settlement discussions.

### IX.    Miscellaneous Provisions

9.01    The Court will retain jurisdiction in this Action to enforce this Consent

Decree.

9.02    The Court will have authority to award, in its discretion, fees and costs

attendant to any motions to enforce the terms of this Consent Decree.

9.03    The Parties shall refrain from disclosing on any website, either by

themselves, through any agent, or by counsel, any of the Parties' home addresses or

telephone numbers.  Breach of this term shall be deemed a material breach of this

Consent Decree.

9.04    This Consent Decree is the embodiment of a good faith settlement for the

purpose of resolving this Action amicably and efficiently and without the necessity for

further litigation.  As such, this Consent Decree shall not in any way be deemed or

construed as an admission by any Party of any wrongful or unlawful act or omission; or

of any violation of any federal, state, or local law; or of any breach of a written, oral or

implied contract; or of any act or omission that was unwarranted, unjustified, or

otherwise improper.  Further, no Party has made any admission of any wrongful or

unlawful act or omission, of any violation of any federal, state, or local law, or of any

breach of a written, oral or implied contract, or of any act or omission that was

unwarranted, unjustified, or otherwise improper.  Further, Defendants are not making

payments to compensate the Plaintiffs for the amounts Plaintiffs alleged they were owed

in their Amended Complaint.  To the extent that any provision within this Consent

12

Decree could possibly be construed as creating an ambiguity or conflict with this Section, it shall be construed in a manner that is consistent with and in no way limiting the intent and plain meaning of this Section.

## X.    **Final Judgment**

10.01   Upon Court approval and entry of this Consent Decree, this Consent Decree shall become a final judgment between and among the Parties.

SO ORDERED THIS _____ DAY OF _____, 2007.


_____
The Honorable Emmet Sullivan
United States District Judge

13

THE UNDERSIGNED PARTY enters into and agrees to this Consent Decree:

_____

Chanel Cryer

6/1/07
Date

_____

James Byrd

6-1-07
Date

_____

Jonathan Cashwell

6/1/07
Date

_____

Marc Inman

6/1/07
Date

_____

InterSolutions, Inc.

8/5/07
Date

_____

Drew Golin

6/5/07
Date

_____

Sara Walder

6/5/07
Date

14